Thomas CARMODY, Plaintiff,

v.

ADM MILLING CO., Defendant.

ADM MILLING CO.,
Third-Party Plaintiff,

v.

MEL JARVIS CONSTRUCTION COMPANY, INC., Third-Party Defendant.

No. 85–CV–1095.

United States District Court,
N.D. New York.

July 15, 1987.

Palmer & Gabel, Poughkeepsie, Edward A. Gabel, III, of counsel, for plaintiff.

Ainsworth Sullivan Tracy Knauf Warner & Ruslander, Albany, N.Y., Joseph C. Teresi, of counsel, for defendant & third party plaintiff.

Carter Conboy Bardwell Case & Blackmore, Albany, N.Y., Randall J. Ezick, of counsel, for third-party defendant.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

This is a diversity personal injury case. Thomas Carmody, a resident of New York, was injured while working on property located in New York and owned by ADM Milling Co., a Minnesota corporation. Carmody brought the present suit against ADM Milling Co. (ADM), asserting two causes of action: (1) negligence in the maintenance and control of the property and (2) failure to comply with applicable statutes and regulations, including the New York Labor Law, the New York Industrial Code and Occupational Safety and Health (OSHA) regulations. ADM impleaded the plaintiff's employer, Mel Jarvis Construction Co. (Mel Jarvis), asserting that Mel Jarvis is liable for ADM's losses in the first party suit based on contribution and indemnification theories. Pending before the court is a motion by the plaintiff for partial summary judgment on the issue of liability under § 240(1) of the New York State Labor Law, as well as a motion by the defendant/third-party plaintiff for partial summary judgment against the third-party defendant for contribution and/or indemnification.

Summary judgment shall be granted when the court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a

matter of law. Fed.R.Civ.P. 56(c). The substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If there is a genuine dispute about material facts, summary judgment will not lie. *Id.* In order for a dispute to be genuine, however, the evidence must be such that a reasonable juror could return a verdict for the non-moving party. *Id.* If the evidence is a *scintilla,* merely colorable or not substantially probative, summary judgment may be granted. *Id.* at 2511–13. Once the moving party has met its initial responsibility of identifying those papers and documents in the case which it believes demonstrates the absence of a genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Section 240(1) of the New York Labor Law provides:

> All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

The New York Court of Appeals has stated that the legislature intended to place primary and inescapable responsibility on owners and general contractors by enacting this statute. *Haimes v. New York Telephone Co.,* 46 N.Y.2d 132, 137, 412 N.Y.S.2d 863, 865, 385 N.E.2d 601, 603 (1978). Consequently, the New York courts have held that a violation of this statute results in absolute liability on an owner for any injuries which result therefrom. *See, e.g., Kerr v. Rochester Gas &*

*Electric Co.,* 113 A.D.2d 412, 496 N.Y.S.2d 880 (4th Dep't 1985); *Weaver v. Lazarus,* 93 A.D.2d 859, 461 N.Y.S.2d 363 (2d Dep't 1983). The absolute liability of § 240(1) results not only from the owner's actions, but from the actions of its contractors as well. *See Struble v. John Arborio, Inc.,* 74 A.D.2d 55, 426 N.Y.S.2d 592 (3d Dep't 1980). Persons protected by the statute are not barred or limited from recovery by their own negligence. *Bland v. Manocherian,* 66 N.Y.2d 452, 497 N.Y.S.2d 880 (1985). Accordingly, to recover from an owner in a § 240(1) action, a "plaintiff need only establish that the statute was violated and that the violation was a proximate cause of his injury." *Linney v. Consistory of Bellevue Reformed Church,* 115 A.D.2d 209, 210, 495 N.Y.S.2d 293, 294 (3d Dep't 1985). "Where the plaintiff meets that burden, summary judgment resolving the issue of liability in the plaintiff's favor is an appropriate remedy." *Id.*

On November 5, 1982, Thomas Carmody was employed by Mel Jarvis, a contractor engaged by ADM to construct grain elevators and other buildings on property owned by ADM. In order to move materials from the ground to the upper levels of a flour storage facility, Mel Jarvis constructed and operated a "material hoist." On the morning of November 5, 1982, the hoist failed, sending debris to the ground. Some of that debris struck the plaintiff working below, causing him injury. The plaintiff directs the court to evidence that the hoist was not constructed so as to give the "proper protection" required by § 240(1). For example, the plaintiff's papers include a copy of an accident report prepared by Mel Jarvis which recited as follows:

Q Was machine, tool, or object defective?

A Yes.

Q If so, in what way?

A Cable was not properly secured with clamps.

Neither the defendant nor the third-party defendant has directed the court to any facts which contradict the plaintiff's assertions that the hoist was constructed, main-

tained or operated in violation of § 240(1). They have failed to meet their burden under *Celotex*.

Third-party defendant Mel Jarvis, however, maintains that § 240(1) does not apply under these facts. Mel Jarvis argues that this section was enacted solely to protect those employees working at elevated heights and that a plaintiff working on the ground when injured cannot be afforded this statutory protection. In making these assertions, Mel Jarvis relies on several decisions which narrowly define the purpose of § 240(1). *See, e.g., Dabolt v. Bethlehem Steel Corp.*, 92 A.D.2d 70, 459 N.Y.S.2d 503 (4th Dep't 1983); *Van Slyke v. Niagara Mohawk Power Corp.*, 93 A.D.2d 990, 461 N.Y.S.2d 643 (4th Dep't 1983), *aff'd* 60 N.Y.2d 774, 469 N.Y.S.2d 674, 457 N.E.2d 780; *Mack v. Altmans Stage Lighting Co., Inc.*, 98 A.D.2d 468, 470 N.Y.S.2d 664 (2d Dep't 1984). Although it is true that the courts in each of these cases did state that the legislature intended primarily to protect workmen from the perils of working at great heights, they were never squarely presented with facts similar to those of the present case. In *Dabolt*, for example, the plaintiff caught and crushed his hand in the machinery of an elevated conveyor belt. *See* 459 N.Y.S.2d at 504. Unlike this case, then, the height of the apparatus was never a factor in the court's disposition of the dispute; indeed, the same accident could have occurred on a ground-level or even subterranean conveyor belt. Similarly, the plaintiff in *Van Slyke* was electrocuted when a tool came in contact with a high-voltage power line; again, the fact that he was in the bucket of an aerial lift at the time neither caused nor aggravated the injury. *See* 461 N.Y.S.2d at 644. Accordingly, both the *Dabolt* and *Van Slyke* courts found § 240(1) inapplicable. In the process, however, they produced the dicta upon which Mel Jarvis so heavily relies. Given the fact that those courts never reached the issue presented by this case, and in light of the more pertinent decisions recounted below, this court does not find that dicta persuasive.

Mel Jarvis also directs the court's attention to *Mack v. Altmans Stage Lighting Co., Inc.*, 98 A.D.2d 468, 470 N.Y.S.2d 664 (2d Dep't 1984), implying that that decision supports the third-party defendant's position. In that case, the court reiterated the Fourth Department dicta that the statute only applied to falls. 470 N.Y.S. at 668, *citing Van Slyke*, 461 N.Y.S.2d 643. However, the *Mack* court seemed very willing to entertain a claim like that of the plaintiff in this case:

> Inasmuch as plaintiff was not injured in a fall from an unsecured ladder or platform which gave way while he was standing on it *and was not struck by a falling ladder or platform*, he was not within the ambit of the statutory protection.

470 N.Y.S.2d at 668 (emphasis added, citations omitted). Thus, the distinction which the third-party defendant asserts—between falling persons and falling objects—is not as clear as it would have the court believe.

Moreover, the narrow language of *Dabolt* and *Van Slyke* has been clarified by more recent decisions. In *Smith v. Jesus People*, 113 A.D.2d 980, 493 N.Y.S.2d 658 (3d Dep't 1985), the plaintiff was injured when an improperly secured plank fell from the scaffold he was trying to move. *Id.* at 981, 493 N.Y.S.2d at 659. Directly disagreeing with "the Fourth Department's restrictive reading of the scope of the protection afforded by Labor Law § 240(1)," the court concluded that the statute did apply to injuries resulting from falling objects. *Id.* at 982, 493 N.Y.S.2d at 659–60.

Moreover, it appears that the court which spawned *Dabolt* and *Van Slyke* would now find the statute applicable to falling debris if squarely presented with the question. *See Siragusa v. State*, 117 A.D.2d 986, 987, 499 N.Y.S.2d 533, 534 (4th Dep't 1986); *Fox v. Jenny Engineering Corp.*, 505 N.Y.S.2d 270 (A.D. 4th Dep't 1986). Therefore, if a conflict ever existed on this issue, it has been resolved such that the Second, Third and Fourth Departments are now in agreement that § 240(1) encompasses the danger of falling objects.

Mindful of its obligation to faithfully adhere to state law in diversity cases,

the court has reviewed the available legislative history of § 240(1). That review discloses nothing which contradicts the interpretation of the various New York appellate divisions. Moreover, the Court of Appeals has construed a similar statute to apply to falling objects as well as to falling workers. *See De Haen v. Rockwood Sprinkler Co.,* 258 N.Y. 350, 179 N.E. 764 (1932) *cited as controlling in Smith,* 113 A.D.2d at 982, 493 N.Y.S.2d at 659–60. In that case, the court held that § 241(5) applied not only to the danger of falling down hoist shafts, but also to workmen being struck by falling objects. *Id.* Chief Judge Cardozo wrote for the court:

> The chief object of this statute is to protect workmen from falling into a shaft. We cannot say, however, that no other hazard was within the zone of apprehension.... A safeguard has been commanded, but without distinct enumeration of the hazards to be avoided. In the revealing light of experience the hazards to be avoided are disclosed to us as the hazards that ensued.

258 N.Y. at 354–55, 179 N.E. 764. Such reasoning seems sound in this case, especially in light of the policy that § 240(1) "is to be liberally construed to accomplish its beneficial purpose; that is, the better protection of workmen engaged in certain dangerous employments." *Bohnhoff v. Fischer,* 210 N.Y. 172, 174 N.E. 130.

■ In order for the plaintiff to succeed on his motion for partial summary judgment, he must also demonstrate that the violation proximately caused his injuries. Both ADM and Mel Jarvis assert that the plaintiff has not produced probative evidence that the "defect" in the hoist proximately led to the plaintiff's injuries. These assertions lack credibility. As already mentioned, the accident report prepared by the defendant Mel Jarvis' employee contains an admission "that the hoist was defective because the hoist cable was not properly secured to the building with clamps and the cable clamps came loose releasing a load of scrap lumber from approximately fifty feet striking the plaintiff about his shoulder." No evidence has been proffered to the court by defendants in opposition to the motion for partial summary judgment to contradict this statement.

■ The defendant's argument that the plaintiff should be required to submit expert proof "that the safety devices proposed by the plaintiff could have feasibly been implemented and would have prevented the accident" is without merit. There is no genuine issue of material fact as to proximate cause here. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Accordingly, the court finds the plaintiff entitled to partial summary judgment against defendant ADM on the issue of liability.

■ With respect to the motion by ADM for partial summary judgment against Mel Jarvis, New York case law is clear. The duty imposed by § 240(1) cannot be delegated to contractors. *Haimes v. New York Telephone Co.,* 46 N.Y.2d 132, 412 N.Y.S.2d 863, 385 N.E.2d 601 (1978); *Struble v. John Arborio, Inc.,* 74 A.D.2d 55, 426 N.Y.S.2d 592 (3d Dep't 1980). However, an owner may recover from a contractor who was actually responsible for the defective condition either under a contract (indemnification) or under the contribution theory that the party who actually caused the injury should pay. *See Horning v. Gore,* 87 A.D.2d 34, 37, 451 N.Y.S.2d 848, 850 (3d Dep't 1982).

■ ADM is entitled to partial summary judgment against Mel Jarvis. The third-party plaintiff has directed the court to uncontradicted deposition testimony that Mel Jarvis employees constructed, maintained, operated, and otherwise exercised control over and responsibility for the defective hoist. For example, Charles Bell, the job superintendent employed by Mel Jarvis to be in charge of the construction site, testified as follows:

Q Do you know who was the person who installed the material hoist?

A No. I do not remember....

Q If there was a hoist there, although you don't have any specific recollection of telling somebody to construct it, would there be any other employee

of Jarvis Construction who would have assigned somebody to do that?

A No. I just don't recall who I had do it.

Q Is there any doubt in your mind that you were the one, in all likelihood, who assigned somebody to build the hoist?

A No.

Further, Richard Vercruysse, the general manager of the ADM facility, testified:

Q Before the first day of operation of the bulk flour terminal, did ADM Milling employees have anything at all to do with the construction of that building?

A None whatsoever.

The third-party defendant has not directed the court to any evidence which contradicts the clear meaning of this testimony; that is, Mel Jarvis exercised sole control over the defective hoist. Moreover, it appears that Mel Jarvis has indemnified ADM for liability arising out of the construction. *See* Art. I, subpar. 1 and Art. VIII, subpar. 1 of the ADM–Mel Jarvis contract. Therefore, partial summary judgment is granted for ADM against Mel Jarvis on the issue of liability.

IT IS SO ORDERED.