**Edward NOVAK, Plaintiff,**

**v.**

**BASF CORPORATION, BASF Wyandotte Corporation and Schenectady Steel Co., Inc., Defendants.**

**SCHENECTADY STEEL CO., INC., Third–Party Plaintiff,**

**v.**

**BURT CRANE AND RIGGING SERVICES, Third–Party Defendant.**

No. 92–CV–1460.

United States District Court, N.D. New York.

Nov. 25, 1994.

Finkelstein, Levine, Gittelsohn & Tetenbaum (Paul F. Cagino, of counsel), Albany, NY, for plaintiff.

Shanley & Fisher, P.C. (Thomas A. Roberts, of counsel), New York City, for defendants, BASF Corp., and BASF Wyandotte Corp.

Donohue, Sabo, Varley & Armstrong, P.C. (Christine M. D'Addio, of counsel), Albany, NY, for defendant & third-party plaintiff Schenectady Steel Co., Inc.

Stockton, Barker & Mead (Matthew Mead, of counsel), Albany, NY, for third-party defendant, Burt Crane & Rigging Services.

## MEMORANDUM DECISION AND ORDER

HURD, United States Magistrate Judge.

### I. Introduction.

This action for personal injuries was brought by plaintiff, Edward Novak ("Novak"), on November 9, 1992, upon filing of a complaint against BASF Wyandotte Corporation and BASF Corp. ("BASF"), the owners of a construction site.[1] A third-party complaint was filed by BASF on February 4, 1993, against general contractor Schenectady Steel Co. ("SSC"), seeking indemnification. Plaintiff then filed an amended complaint on May 5, 1993 to include both BASF and SSC

in his claims. With the service of answers to the amended complaint with crossclaims, BASF's third-party action was eventually discontinued. A second third-party complaint for indemnification was filed by SSC on June 24, 1993, against a subcontractor, Burt Crane & Rigging Services ("BCR").

The first of the motions upon which we now focus was filed by the owners, BASF, on October 5, 1994. BASF moved for summary judgment upon common-law and contractual indemnification grounds against both the general contractor, SSC, and the subcontractor, BCR. On October 11, 1994, plaintiff moved for partial summary judgment against the owners and general contractor, BASF and SSC, on the issue of liability under Labor Law § 240(1). SSC cross-moved for a preclusion order against plaintiff for failure to produce discovery material, and for summary judgment against the subcontractor, BCR, for common-law and contractual indemnification. Finally, SSC filed a second motion for summary judgment against BCR because of BCR's failure to respond initially.

Therefore, five motions must be addressed: (1) plaintiff's motion for partial summary judgment on liability against BASF and SSC; (2) BASF's motion for summary judgment against SSC and BCR; (3) SSC's two motions for summary judgment against BCR; and (4) SSC's cross-motion for a preclusion order. The court has carefully reviewed and considered all of the documents submitted by the parties. Oral argument was heard in Albany, New York, on November 3, 1994.

### II. Facts.

This case revolves around an accident that took place on April 17, 1991, at a construction site in Rensselaer, New York, owned by BASF. This Rensselaer construction project entailed an addition to an already existing building at BASF's facility. BASF contracted with defendant and third-party plaintiff, SSC, for the fabrication and construction of the structural steel for that project. SSC in turn subcontracted the responsibility of erecting the addition's steel frame to third-

---

1. Defendants BASF Wyandotte Corp. and BASF Corp., owners of the construction site in question, are alleged to have consolidated prior to the accident and will be referred to jointly herein as BASF.

party defendant, BCR. At the time of the accident, Novak was employed by BCR at the BASF Rensselaer site.

BASF also contracted with Design Services Unlimited to oversee the engineering and construction on the entire project. Design Services president, Carl Ehle ("Ehle"), was on the site daily. His responsibilities included assignment of work, scheduling, coordination of interdisciplinary coordination between trades, material requisition, bid package writing, and estimating. It is undisputed that SSC likewise had an employee on site regularly.

Novak and a coworker, Dan Hladik ("Hladik"), were working directly under one Peter Judson ("Judson") at the time of the accident. Judson, a supervisor for BCR, was responsible for directing labor at the job site, including the work of BCR employees and safety at the job site. On April 17, 1991, Judson directed each of them to begin "bolting up" a girder (a procedure of bolting a horizontal girder to a vertical beam), and further directed that they use a 32 foot extension ladder provided on the site by BCR. It is not clear whether Judson directed that the extension ladder be split into two 16 foot pieces; however, the two workers proceeded to do just that, Hladik taking the lower portion and Novak taking the upper portion. Novak leaned his ladder (which had no feet or rubber cleats on the bottom to ensure traction) against a vertical beam, with the base standing on a concrete slab. He climbed to what was estimated to be two rungs from the top of the ladder in order to determine the size bolt needed for the job. He wore a tool belt weighing upwards of forty pounds at the time, but he carried nothing in his hands.

While leaning to the side of the beam to examine the bolt sizes, the base of the ladder slipped outward. The top portion of the ladder began to travel down the vertical beam against which it leaned. Its top rung was not tied off to prevent it from sliding in such a fashion. The ladder continued to descend at a quick rate; the bottom skidding along the concrete, the top sliding down the length of the beam. Novak rode the ladder the entire ten to fifteen feet to the ground.

As a result, he claims that he sustained serious and permanent personal injuries.

### III. *Discussion.*

#### A. *Summary Judgment.*

■ A motion for summary judgment may be granted only when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, Partnership v. Medfit Int'l, Inc.*, 982 F.2d 686, 689 (1st Cir.1993); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the summary judgment motion." *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). In other words, a motion for summary judgment pursuant to Fed.R.Civ.P. 56 shall be granted only "when the pleadings, evidence obtained through discovery, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). Therefore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Thus, if the nonmoving party cannot produce sufficient evidence to support the jury verdict, summary judgment is proper. *Id.* at 249, 106 S.Ct. at 2510–11. "In determining how a reasonable jury would decide, the Court must resolve all ambiguities and draw all inferences against the moving party." *Lang*, 949 F.2d at 580. However, when the moving party has met the burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also Liberty Lobby*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10.

At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* "The judge's function is not ... to weigh the evidence and determine the truth of the matter," *Liberty Lobby,* at 249, 106 S.Ct. at 2511, such "is the prerogative of the finder of fact." *Murphy v. Provident Mutual Life Ins. Co.,* 923 F.2d 923, 930 (2d Cir.1990) (Kearse, J., dissenting), *cert. denied,* —— U.S. ——, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991). Therefore, the judge's role is "to determine whether there does indeed exist a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2511.

■ In a case where multiple parties have moved for summary judgment, as is the case at bar, each side must sustain its burden of proving the absence of disputed issues of material fact in order to be successful.

**B. *Plaintiff's Partial Summary Judgment Motion against BASF and SSC.***

■ Plaintiff purports to be entitled to summary judgment on the issue of liability, against BASF and SSC, the owner and general contractor of the Rensselaer construction site, respectively. Labor Law § 240(1) imposes absolute liability on owners, contractors, and agents for failing to provide adequate safety devices. N.Y.Lab.Law § 240(1) (McKinney 1986).[2] New York's Court of Appeals explained the reach of the statute, stating:

> Thus, section 240(1) imposes absolute liability on owners, contractors and their agents for any breach of the statutory duty which has proximately caused injury. The duty imposed is 'nondelegable and ... an owner is liable for a violation of the section even though the job was performed by an independent contractor over which it exercised no supervision or control.'

*Gordon v. Eastern Ry. Supply Co.,* 82 N.Y.2d 555, 559, 606 N.Y.S.2d 127, 129, 626 N.E.2d 912, 914 (1993) (quoting *Rocovich v. Consolidated Edison Co.,* 78 N.Y.2d 509, 513, 577 N.Y.S.2d 219, 583 N.E.2d 932 (1991)). Furthermore, § 240(1) precludes any defense that the injured worker was contributorily negligent. *Stolt v. General Foods Corp.,* 81 N.Y.2d 918, 920, 597 N.Y.S.2d 650, 651, 613 N.E.2d 556, 556 (1993).

■ BASF's status as owner, alone is enough to impose liability and grant summary judgment. Likewise, a contractor having full control of both plaintiff and the area of the work, may be held absolutely liable under the statute. *Russin v. Louis N. Picciano & Son,* 54 N.Y.2d 311, 317, 445 N.Y.S.2d 127, 129, 429 N.E.2d 805, 807 (1981). New York's Court of Appeals clearly stated, "It is evident from the legislative history of the 1969 amendments to sections 240 and 241 that these revisions were intended to shift responsibility for construction site injuries from those parties without control of the injury producing activity to the general contractor and owner." *Id.*

■ The failure to provide a ladder with nonskid devices on the feet, or "tie off" rope, as well as instructions and requirements on the workers' use of tie off rope, is a violation of § 240(1). *MacNair v. Salamon,* 199 A.D.2d 170, 171, 606 N.Y.S.2d 152, 153 (1st Dep't.1993) ("It is well settled that the failure to secure a ladder to insure that it remains stable and erect while the plaintiff was working on it constitutes a violation of Labor Law § 240(1) as a matter of law.") It is undisputed that the half-ladder was not tied off and did not have nonskid devices on the bottom.

■ BASF and SSC contend that there is a question as to whether plaintiff was a "recalcitrant worker." *See Smith v. Hooker Chems. & Plastics Corp.,* 89 A.D.2d 361, 366, 455 N.Y.S.2d 446, 449 (4th Dep't.1983), *ap-*

---

**2.** Subdivision one states in part:
All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the

performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes and other devices which shall be so constructed, placed and operated so as to give proper protection to a person so employed.
N.Y.Lab.Law § 240(1) (McKinney 1986).

*peal dismissed* 58 N.Y.2d 824 ("statutory protection does not extend to workers who have adequate and safe equipment available to them but refuse to use it"). Defendants point out that while plaintiff argues that BCR supervisor Judson directed Novak to use the half ladder, Judson denies this, and therefore a question of fact exists. The New York Court of Appeals, however, distinguished between the viable recalcitrant worker defense and the foreclosed defense of contributory negligence. The Court stated:

> The mere allegation that plaintiff had disobeyed his supervisor's instructions when he climbed the broken ladder does not provide a basis for a defense against plaintiff's Labor Law § 240(1) cause of action. It is well settled that the injured's contributory negligence is not a defense to a claim based on Labor Law § 240(1) and that the injured's culpability, if any, does not operate to reduce the owner/contractor's liability for failing to provide adequate safety devices.

*Stolt*, 81 N.Y.2d at 920, 597 N.Y.S.2d at 651, 613 N.E.2d at 556. The recalcitrant worker defense is only valid where the worker refused to use an available safety device. *Haggins v. State*, 81 N.Y.2d 921, 922–23, 597 N.Y.S.2d 651, 653, 613 N.E.2d 557, 559 (1993); *see also Laurie v. Niagara Candy, Inc.*, 188 A.D.2d 1075, 1076, 592 N.Y.S.2d 181, 182 (4th Dep't 1992) (summary judgment for plaintiff who fell off ladder where, although plaintiff wore a safety belt that had a tie-off line, no proof was offered that he was told to use it under the circumstances in which he fell, and thus, there was no merit to the argument that plaintiff was a recalcitrant worker.)

 Furthermore, simply supplying adequate safety devices is not enough. The statute states that the ladder must have been properly "placed and operated as to give proper protection to a person so employed." N.Y.Lab.Law § 240(1) (McKinney 1986); *see Haimes v. New York Tel. Co.*, 46 N.Y.2d 132, 412 N.Y.S.2d 863, 385 N.E.2d 601 (1978). That there may have been ropes on the site does not establish that plaintiff was provided with proper protection. He was instructed to undertake the bolting up of a girder and

had access to only one portion of a ladder in order to complete the job.

BASF and SSC both argue that it is plaintiff's burden to answer questions of fact. They argue that the plaintiff was provided with adequate safety equipment (i.e. ladder with nonskid feet), and then proceeded to use it improperly by his own choice. New York's Fourth Department articulated this point:

> While the Legislature has sensibly acted to protect workers from a failure by owners or contractors to supply equipment or for supplying faulty equipment, the statutory protection does not extend to workers who have adequate and safe equipment available to them but refuse to use it. Their injuries may be compensated under the provisions of the Workers' Compensation Law.

*Smith*, 89 A.D.2d at 366, 455 N.Y.S.2d at 449.

Yet, evidence is undisputed that two workers were directed to complete the task of bolting up a girder at two different locations, and were provided with only one extension ladder. This Court considers such a supply of safety equipment to be insufficient to complete the job directed. Neither man refused to use a ladder with nonskid footing or tie offs. Both used that which was provided.

BASF further argues that plaintiff has failed to establish proximate cause, having provided no evidence that safety devices would have prevented the fall. However, a rope tie off would certainly have prevented the ladder from falling. Add to this, nonskid footing, and the accident as it occurred could have been prevented. Proximate cause is not an issue herein.

Therefore, plaintiff's motion for partial summary judgment on the issue of liability will be granted.

### C. BASF Summary Judgment Motion Against SSC and BCR.

#### 1. Common–Law Indemnification.

 BASF claims that it is entitled to summary judgment against SSC and BCR, based upon both common-law and contractual indemnification. Common-law indemnification seeks to ensure that a party not at fault will not be forced to endure the loss. "The

general rule is that a right of implied indemnification will arise in favor of one who is compelled to pay for another's wrong." *Margolin v. New York Life Ins. Co.*, 32 N.Y.2d 149, 152, 344 N.Y.S.2d 336, 338, 297 N.E.2d 80, 82 (1973). Contractual indemnification likewise seeks to shift liability, while staying within that realm of predefining rights that is contract.

District Judge Neal P. McCurn stated in *Carmody v. ADM Milling Co.*, 665 F.Supp. 147 (N.D.N.Y.1987), that "[w]ith respect to the motion by ADM for partial summary judgment, ... an owner may recover from a contractor who was actually responsible for the defective condition either under a contract (indemnification) or under the contribution theory that the party who actually caused the injury should pay." *Id.* at 151.

■ However, a contractual right in no way affects liability under common-law indemnification. New York Court of Appeals Judge Richard D. Simons' words in *Hawthorne v. South Bronx Community Corp.*, 78 N.Y.2d 433, 576 N.Y.S.2d 203, 582 N.E.2d 586 (1991), apply with equal force to the facts herein. He stated:

> Placing an indemnity provision in the contract did not alter that common-law duty, for the mere existence of an indemnity provision does not indicate an intent to replace common-law liability with contractual liability.... Under the facts presented, *both* a contractual duty and a common-law duty to indemnify existed, with the common-law duty depending not on contract, but on the fact that the owner and general contractor have been held vicariously liable, without fault, for [subcontractor]'s negligence.

*Id.* at 437, 576 N.Y.S.2d 203, 582 N.E.2d 586. In order to succeed in a common-law indemnification claim then, it remains for BASF to show that they were merely 'vicariously liable, without fault.' *Id.*

■ While SSC and BCR attempt to show BASF's involvement in this accident due to the on site presence of a "supervisor"—Ehle from Design Services Unlimit-

ed—evidence is lacking of his direct involvement in the accident. The Appellate Division, Fourth Department, in *Damon v. Starkweather*, 185 A.D.2d 633, 585 N.Y.S.2d 906 (4th Dep't.1992), broached the issue regarding at what level of control a general contractor would be subject to liability. The court pointed out that:

> Starkweather Construction's role was limited to providing blueprints indicating the work to be performed, periodic inspections of the progress of the work, general clean up, and the ordering of materials and supplies as needed. Barrows [subcontractor] presented no evidence that the scaffolding lumber or bracket was supplied by Starkweather Construction. The evidence is that Barrows supplied all of the tools and equipment ... and thus, [Starkweather Construction] is entitled to summary judgment on its common-law indemnification claim.

*Id.* at 633–34, 585 N.Y.S.2d at 907–08.

As with Starkweather, Ehle's duties leaned more toward that of overseer. Design Services Unlimited had been contracted for construction management services. Ehle performed periodic inspections. As noted above, his other responsibilities included assignment of work, scheduling, coordination of interdisciplinary coordination between trades, material requisition, bid package writing, and estimating. Neither he nor BASF supplied tools or materials. He simply oversaw the construction work performed by the subcontractors.

Furthermore, there is no evidence that Ehle, Design Services or BASF had notice, either actual or constructive of the practice in question.[3] There is no evidence that they had ever witnessed workers dismantling an extension ladder or using a dismantled ladder. There is no evidence that they were aware of a practice of dismantling or using a dismantled extension ladder. There is no evidence of notice, either actual or constructive, of workers failing to tie off a ladder while in use. BCR had sole control of the site, labor, and safety. BCR likewise sup-

---

3. In fact, there is no evidence submitted demonstrating that this was anything other than the first and only time the procedure was performed in the manner described above.

plied the ladder, and had "tie off" rope available.

### 2. *Contractual Indemnification.*

█ BASF is entitled to contractual indemnification as well. BASF's contract with SSC, and SSC's contract with BCR, both contain broad based indemnification clauses that expressly protect BASF as owner of the construction site from liability for damage or injury resulting on the work site as well as costs and attorney fees.[4]

The New York State Appellate Division, Fourth Department, found summary judgment to lie where "[t]he contract between [owner] and [contractor] contains a broad indemnity clause under which [contractor] is required to indemnify [owner] against all claims arising out of the performance of the work. . . ." *Smith v. Cassadaga Valley Central School District,* 178 A.D.2d 955, 957, 578 N.Y.S.2d 747, 749 (4th Dep't. 1991). Such language "manifests a clear intention to indemnify." *Id.* Note that the *Smith* court denied summary judgment against the subcontractors who had contract clauses to indemnify the owner for willful or negligent acts. The court found such provisions to read much more narrowly than the broad clause contained in the contract between the owner and the general contractor. *Smith,* 178 A.D.2d at 957, 578 N.Y.S.2d at 749. In our case however, the subcontractor, BCR, in agreeing to indemnify BASF, did so with an equally broad-based clause. (*See* Footnote 4).

Therefore, BASF's motion for summary judgment on the basis of both common-law and contractual indemnification will be granted.

### D. *SSC's Summary Judgment Motions against BCR.*

SSC's first motion for summary judgment against the subcontractor BCR is based upon the same arguments posed by BASF; i.e., both common law and contractual indemnification. (*See* supra). SSC states that it had no control of the site which was supervised and controlled by Judson of BCR.

█ BCR argues that New York's General Obligations Law, § 5–322.1(1) precludes contractual indemnification. That section states in part:

1. A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, . . . purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property contributed to, caused by or resulting from the negligence of the promisee, his agents or employees, or indemnitee, whether such negligence be in whole or in part, is against public policy and is void and unenforceable; . . . This subdivision shall not preclude a promisee requiring indemnification for damages arising out of bodily injury to persons or damage to property caused by or resulting

---

4. BASF's contract with SSC states in part:
 1. Contractor [SSC] shall be responsible for and shall indemnify and hold harmless Owner [BASF], its offices, agents and employees, from and against: . . . (b) any and all liability, damage, loss, cost, expense, claim, demand, suit, action, judgment, recovery for or on account of any injury or death of person . . . injury, death, or damage to property of Owners or Contractors, representatives arising out of, or in any way occurring directly or indirectly with the Work, including, without limitation, delegable or nondelegable duties imposed on Contractor or Owner by law, except for such injury, death or damage as is caused by the sole negligence of Owner; and Contractor shall, at its sole expense, defend any and all actions based thereon.

SSC's contract with BCR states in part:
 4.6 Indemnification
 4.6.1 To the fullest extent permitted by law, the Subcontractor [BCR] shall indemnify and hold harmless the Owner, [BASF] the General Contractor, Contractor, . . . from and against claims, damages, losses and expenses, . . . arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, . . . regardless of whether or not such claim, damages, loss or expense is caused in part by a party indemnified hereunder.

from the negligence of a party other that the promisee, whether or not the promisor is partially negligent.

N.Y.Gen.Oblig.Law § 5–322.1(1) (McKinney's 1994). However, the Appellate Division, Second Department, in *Connolly v. Brooklyn Union Gas Co.*, 168 A.D.2d 477, 562 N.Y.S.2d 718 (2d Dep't.1990), found that this statute was not a blanket voidance of indemnification clauses. The court found that "if there is no evidence of any fault on the part of the owner or contractor, the statute is not violated by allowing that owner or contractor to allocate responsibility through an indemnification agreement." *Id.* at 478, 562 N.Y.S.2d at 719. The court continued that "[i]n order to prevail on its claim that the indemnification agreement was unenforceable under General Obligations Law § 5–322.1, and that it therefore had no duty to defend, Hallen [indemnifier] was required to present proof that Brooklyn Union Gas was at least partially negligent." *Id.*

BCR offers nothing more than an allegation that both BASF and SSC had representatives present at the time plaintiff's accident occurred. Thus, SSC's first summary judgment motion for common-law and contractual indemnification must be granted as well. SSC's second summary judgment motion upon failure of BCR to respond is dismissed as moot.

### E. *SSC's Preclusion Motion Against Plaintiff.*

A discovery order was filed by this Court on June 13, 1994, requiring among other items, tax records and returns, employment records, and copies of marked exhibits. Plaintiff states he does not have tax or employment records, but has provided SSC with authorizations to enable it to obtain same. Plaintiff also states that SSC has copies of the relevant exhibits. SSC argues that it does not have copies of the *marked* exhibits, although it has the exhibits, and the order requires production of marked exhibits.

Plaintiff shall provide SSC with copies of the marked exhibits. The authorizations are sufficient to comply with the remainder of the discovery order.

### IV. *Conclusion.*

Accordingly, it is

ORDERED that:

1. Plaintiff's motion for partial summary judgment against BASF Wyandotte Corporation and BASF Corp. and Schenectady Steel Co. on the issue of liability is **GRANTED;**

2. BASF Wyandotte Corporation and BASF Corp.'s motion for summary judgment against Schenectady Steel Co. and Burt Crane & Rigging Services on the issues of common-law and contractual indemnification is **GRANTED;**

3. Schenectady Steel Co.'s motion for summary judgment against Burt Crane & Rigging Services on the issues of common-law and contractual indemnification is **GRANTED;**

4. Schenectady Steel Co.'s second motion for summary judgment against Burt Crane & Rigging Services is **DENIED** as moot; and

5. Schenectady Steel Co.'s cross-motion to preclude is **GRANTED** to the extent that plaintiff shall provide Schenectady Steel Co. with copies of the marked exhibits on or before December 20, 1994; the remainder of the motion is **DENIED.**

A trial date will be set to determine the issue of damages.

IT IS SO ORDERED.