AGRICULTURAL INSURANCE COMPANY, INC., As Assignee of the Cause of Action of Robert T. Treadway, Jr., Plaintiff,

v.

ACE HARDWARE CORPORATION and Butler Construction Company, Defendants.

Ace Hardware Corporation and Butler Construction Company, Defendants/Third–Party Plaintiffs,

v.

Schwob & Sage Building Corporation, Third–Party Defendant.

No. 98 CIV. 8708(RJW).

United States District Court, S.D. New York.

Aug. 12, 2002.

Marschhausen & Fitzpatrick, P.C., Garden City, NY (Dirk Marschhausen, of Counsel), for Plaintiff.

Malapero & Prisco, New York, NY (Joseph J. Prisco, of Counsel), for Defendants/Third–Party Plaintiffs.

Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., New York, NY (Patrick V. Didomenico, of Counsel), for Third–Party Defendant.

## OPINION

WARD, District Judge.

Plaintiff Agricultural Insurance Company, Inc. ("Agricultural Insurance"), as assignee of the cause of action of Robert T. Treadway, Jr. ("Treadway"), moves pursuant to Fed.R.Civ.P. 56 and N.Y. Labor Law § 240(1) for partial summary judgment on the issue of liability on the second cause of action against defendants. For the reasons hereinafter stated, plaintiff's motion is granted.

## BACKGROUND

On January 6, 1997, plaintiff's assignor Treadway was injured during his employment when he fell from an elevated height at a construction site during the building of a Retail Support Center in Wilton, New York. The premises were owned by defendant Ace Hardware Corporation ("Ace"). Ace hired Butler Construction Company ("Butler") as its general contractor. Butler in turn subcontracted steel erection work to Treadway's employer, Schwob & Sage Building Corporation ("Schwob").

The injury to Treadway occurred when the steel beam on which he was standing and working collapsed. At the time of the accident, Treadway was provided with the following safety devices: a safety harness, a safety line, a hard hat, and gloves. Treadway's safety harness was fastened to the safety line by a lanyard, which in turn was attached to the steel beam. When the beam collapsed, Treadway was pulled by his harness to the ground thirty to thirty-five feet below.

## DISCUSSION

### I. Accident Investigation Report

In support of the instant motion, plaintiff relies on an Accident Investigation Report ("the Report") prepared by defendant Butler. The Report consists of: (1) an "employee interview" of how the accident occurred; (2) a list of witnesses; (3) a description of the ways the accident could have been prevented; and (4) five unsworn witness statements by construction workers who were working with Treadway at the time of the accident.

Plaintiff contends that the Report is admissible because (1) it comes within the business record exception to the hearsay rule pursuant to Fed.R.Evid. 803(6), and (2) it constitutes a party admission under Rule 801(d)(2)(D). The Court finds that the conclusion/summary portion of the Report is admissible, but under Rule 801(d)(2)(B), not Rule 801(d)(2)(D).[1] The

---

1. Even assuming, *arguendo,* that the Report is inadmissible in its entirety, the facts of the

case as orally represented to the Court by counsel for all the parties, (Conf. Tr. of 7/8/02,

Report, however, is not admissible under Rule 803(6) because it contains double hearsay.

## A. Party Admission

Plaintiff contends that the conclusion/summary portion of the Report is admissible under Fed.R.Evid. 801(d)(2)(D). Under the rule, a statement is not hearsay if it is offered against a party and is made "by the party's agent or servant concerning a matter within the scope of the agency or employment, [and] during the existence of the relationship." Fed.R.Evid. 801(d)(2)(D).

Before determining whether a statement is admissible as a party admission, the Court must find: "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Id.* In the present case, John Burkman, then safety superintendent for defendant Butler, prepared the summary/conclusion portion of the Report during the course of his employment. Moreover, his statements concerned a matter within the scope of his work. (Burkman Dep. Tr. at 18).[2]

Burkman, however, was not an eyewitness to the accident. Instead, he relied on the statements of other eyewitnesses in order to write the Report. *Id.* at 13–15. The Report, therefore, contains hearsay. With regard to this issue, the Second Circuit has held that a party admission containing hearsay is admissible if it "draws inferences from the underlying hearsay and thus 'manifest[s]' an adoption or belief in its truth.'" *Schering Corp. v. Pfizer, Inc.,* 189 F.3d 218, 239 (2d Cir.1999) (citing Fed.R.Evid. 801(d)(2)(B)). If the party admission, however, "merely repeats hearsay and thus fails to concede its underlying trustworthiness," it is inadmissible. *Id.*

Here, although Burkman himself did not witness the accident, he drew inferences as to what in fact occurred from the statements of the construction workers. (Burkman Dep. Tr. at 23–25). By doing so, he adopted the truth of the statements made by the eyewitnesses. Accordingly, the conclusion/summary portion of the Report is admissible as a party admission pursuant to Rule 801(d)(2)(B).[3]

at 12–16; Oral Arg. Tr. of 3/27/02, at 26–27), support the Court's finding of liability pursuant to N.Y. Labor Law § 240(1).

2. The unsworn statements of the eyewitnesses attached to the Report are not covered by Rule 801(d)(2)(D). Plaintiff does not contend and has not established that these statements were made by defendants' agents during the course of the agency relationship nor that they related to a matter within the scope of the employment.

3. As to Fed.R.Evid. 803(6), the Court finds that the Report contains double hearsay. Double hearsay is not admissible unless each level of hearsay is covered by an exception to the hearsay rule. *United States v. Bortnovsky,* 879 F.2d 30, 34 (2d Cir.1989).

In the instant case, although Burkman may well have prepared the Report in the regular course of business, the Report contains hearsay since Burkman was not an eyewitness to the accident; thus, the conclusion/summary portion of the Report is not covered by Rule 803(6). (Burkman Dep. Tr. at 23–25).

Moreover, the unsworn statements of the witnesses—the construction workers at the site at the time of the accident—do not come within the business record exception. Although these workers were employees of Schwob, plaintiff has not shown that these workers had a "duty to report." *See id.* (holding that the statement of insurance adjuster was not covered under Rule 803(6) because he had no duty to report); *see also United States v. Snyder,* 787 F.2d 1429, 1434 (10th Cir.1986) (affirming exclusion of report because it contained statements of those with no business duty to report); *Clark v. City of Los Angeles,* 650 F.2d 1033, 1037 (9th Cir. 1981) (holding that hearsay statements within business records are admissible only if the

## II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to [the fact finder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the Court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir.1993).

Initially, the moving party must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party is required to introduce evidence beyond the mere pleadings to show that there is an issue of material fact concerning "an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

## III. N.Y. Labor Law § 240(1)

■ Plaintiff seeks partial summary judgment pursuant to § 240(1) of the New York Labor Law. Section 240(1) imposes absolute liability on owners or contractors or their agents for injuries proximately caused by a failure to "provide safety devices necessary for protection to workers subject to the risks inherent in elevated work sites." *Desrosiers v. Barry, Bette & Led Duke, Inc.*, 189 A.D.2d 947, 592 N.Y.S.2d 826 (3d Dep't 1993). The statute imposes a nondelegable duty upon owners and general contractors. Thus, they may be found liable even if they have not exercised supervision or control over the work site. *Rocovich v. Consol. Edison Co.*, 78 N.Y.2d 509, 577 N.Y.S.2d 219, 583 N.E.2d 932 (1991).

Specifically, § 240(1) requires that owners and contractors furnish, or cause to be furnished, "scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection." N.Y. Labor Law § 240(1) (McKinney 1986 & Supp.1999). The statute is to be interpreted "as liberally as may be" to achieve the purpose of placing the ultimate responsibility for building practices on owners and contractors. *See Lombardi v. Stout*, 80 N.Y.2d 290, 296, 590 N.Y.S.2d 55, 604 N.E.2d 117 (N.Y.1992); *Rocovich v. Consol. Edison*, 78 N.Y.2d 509, 577 N.Y.S.2d 219, 583 N.E.2d 932 (1991).

To obtain summary judgment on the issue of liability under the statute, plaintiff must show that the statute has been violated as a matter of law, and that this violation was the proximate cause of the plaintiff's injuries. *Gomez v. Preferred*

person providing the information had a "duty of accuracy"). In other words, the construction workers in this case were not "acting in the regular course of business activity" when they gave their statements. Rather, their regular business activity consisted of constructing and erecting buildings.

*Rentals, Stockton Bldg., Inc.,* 1997 WL 749389, \*3, 1997 U.S. Dist. LEXIS 19222, at \*10 (S.D.N.Y. Dec. 3, 1997). In this case, plaintiff contends that partial summary judgment on the issue of liability is warranted as a matter of law because the safety devices available to Treadway did not provide him with proper protection in the performance of his work.

The Court notes at the outset that New York case law addressing the issue of § 240(1) violations has not been entirely consistent; however, this Court finds that the cases cited herein more accurately set forth New York law and that the facts of this case trigger liability under § 240(1).[4]

■ In *Conway v. New York State Teachers' Ret. System,* the Third Department held that "proper protection" under the statute requires that the safety device be "appropriately placed or erected so that it would have safeguarded the employee" and that the device itself "be *adequate* to protect against the hazards entailed in the performance of the particular task to which the employee was assigned." 141 A.D.2d 957, 530 N.Y.S.2d 300 (3d Dep't 1988) (emphasis in original). Put another way, mere availability of a particular piece of safety equipment is not adequate if it does not provide safety "without the use of additional precautionary devices." *Id.*

Similarly, the district court in *Jimenez v. N.Y.C. Sch. Constr. Auth.,* 2000 WL 1804146, 2000 U.S. Dist. LEXIS 17786 (S.D.N.Y. Nov. 20, 2000), granted plaintiff partial summary judgment on the issue of liability even though defendant had furnished a safety device—a piece of hoisting equipment, such as a rope, pulley, and bucket—for plaintiff's use. In that case, plaintiff fell while lowering iron debris by means of a pulley system. The court held that the hoisting equipment provided to plaintiff could not have prevented him from falling; rather, defendant should have furnished a *proper* safety device for plaintiff's protection, such as a pulley with a weight reduction mechanism. *Id.,* 2000 WL 1804146, \*5, 2000 U.S. Dist. LEXIS 17786, at \*14–\*15.

■ In the present case, even though defendant provided Treadway with a safety harness that was fastened to a safety line, the effectiveness of the devices was negated by the fact that they were attached to the beam which Treadway was in the process of installing and on which he was standing. The safety line and harness, therefore, were positioned in such a manner that they could not have prevented Treadway from falling when the beam on which he was working collapsed. As such, the devices could not have decreased the height-related risk that Treadway faced when working on the elevated beam. *See also Seguin v. Massena Aluminum Recovery Co.,* 229 A.D.2d 839, 645 N.Y.S.2d 630 (3d Dep't 1996) (holding defendant liable because the ladder was positioned in such a way that it could not have prevented plaintiff from falling); *McCarthy v. Republic of Singapore,* 1995 WL 70650, \*\*2–3, 1995 U.S. Dist. LEXIS 1944, at \*5–\*6 (S.D.N.Y. Feb. 16, 1995) (granting summary judgment to plaintiff because "the ladder was not 'placed' in such a manner as necessary to provide Plaintiff with 'proper protection' "); *Novak v. BASF Corp.,* 869 F.Supp. 113, 118 (N.D.N.Y.1994) (stating that the ladder must be "properly placed and operated as to give proper pro-

---

4. As noted above, the cases have not been entirely consistent. For cases reaching a contrary result, see *Tranchina v. Sisters of Charity Health Care Sys. Nursing Home, Inc.,* 742 N.Y.S.2d 655 (2d Dep't 2002); *Grogan v. Nor-* *lite Corp.,* 282 A.D.2d 781, 723 N.Y.S.2d 529 (3d Dep't 2001); *Blair v. Rosen–Michaels, Inc.* 146 A.D.2d 863, 536 N.Y.S.2d 577 (3d Dep't 1989).

tection to a person so employed"); *Orellano v. 29 East 37th St. Realty Corp.*, 292 A.D.2d 289, 740 N.Y.S.2d 16 (1st Dep't 2002).

Third-party defendant Schwob, however, argues that § 240(1) is not applicable to the instant case because the safety harness did not malfunction and therefore was not defective. Schwob contends that the alleged malfunction was in the steel structure of the building itself, which is not a situation contemplated by the statute.

The Court disagrees with the third-party defendant's contention. In *Lewis–Moors v. Contel of New York, Inc.*, 167 A.D.2d 732, 563 N.Y.S.2d 303, 305 (3d Dep't 1990), a case factually analogous to the case at bar, plaintiff was injured when a telephone pole to which his safety belt was attached and on which he was standing collapsed. Defendant argued, *inter alia*, that it had not violated § 240(1) because plaintiff was equipped with a proper safety device, such as the safety belt. The court, however, rejected defendant's claim, stating:

> "Plainly, the structure plaintiff was working on was not equipped with sufficient 'stays ... blocks ... braces ... and other devices' as to give proper protection, i.e., to prevent its collapsing, and thus a prima facie case of liability under Labor Law § 240(1) has been established." *Id.*

In other words, even though plaintiff was provided with a safety device, defendant was found liable because the safety belt, which was attached to the pole on which plaintiff was standing, could not have provided plaintiff with proper protection. As a consequence, the court granted plaintiff partial summary judgment on the issue of liability.

Another case involving a safety device which was connected to a structure that collapsed is *Tauriello v. New York Tel. Co.*

*et al.*, 199 A.D.2d 377, 605 N.Y.S.2d 373 (2d Dep't 1993). In that case, plaintiff was injured when the utility pole on which he was working fell across the road. At the time of the accident, plaintiff was wearing a hard hat and a safety belt, which was attached to the pole. *Id.* at 374. The pole collapsed while he was climbing to the top using metal rungs on the pole. As a result, plaintiff was pulled to the ground by his safety belt. *Id.* The court granted plaintiff partial summary judgment and held that the owners of the utility pole had a "nondelegable duty of furnishing or erecting devices 'which shall be so constructed, placed and operated as to give proper protection to a person so employed.'" *Id.* at 375.

In the instant case, the safety devices pulled Treadway to the ground when the beam to which the safety line was attached and on which Treadway was standing collapsed. Consistent with *Lewis–Moors* and *Tauriello*, this Court finds that the safety devices furnished to Treadway did not provide him with proper protection.

To satisfy their duty under the statute, defendants should have provided Treadway with additional safety devices which would have prevented the fall. For example, defendants should have furnished scaffolding or another device on which Treadway could have stood, or attached the safety line to a sound structure, rather than the beam which he was in the process of installing. Defendants, however, failed to do so. *See Merante v. IBM*, 169 A.D.2d 710, 564 N.Y.S.2d 463 (2d Dep't 1991) (holding defendants liable because they failed to provide devices that could have broken the plaintiff's fall, such as scaffolding, netting, or proper safety belts); *see also Stein v. Yonkers Contracting, Inc.*, 244 A.D.2d 474, 664 N.Y.S.2d 332 (2d Dep't 1997).

Accordingly, this Court concludes as a matter of law that the safety devices provided to Treadway were inadequate to protect him against hazards encountered while working on the beam to which the safety line was attached, and that the failure of defendants to provide scaffolding or other safety devices for Treadway's protection was a violation of § 240(1).

## IV. Proximate Cause

Defendants and third-party defendant also claim that triable issues of fact remain as to whether their actions were the proximate cause of Treadway's injuries. They contend that a strong gust of wind may have blown over the steel beam; thus, the wind may have constituted a superceding cause relieving defendants of liability. In response, plaintiff asserts that the wind could not have caused the collapse of a properly constructed beam.

■ To impose absolute liability on owners and contractors, plaintiff must prove that the defendants violated § 240(1) and that the violation was the proximate cause of his injuries. Summary judgment on the issue of liability may not be granted to plaintiff "if there is any view of the evidence which would permit a finding that the defendant's violation of that provision might *not* have been a proximate cause of the plaintiff's accident." *Romano v. Hotel Carlyle Owners Corp.*, 226 A.D.2d 441, 641 N.Y.S.2d 50 (2d Dep't 1996) (emphasis in original).

In support of their argument, defendants and third-party defendant rely on *Zeitner v. Herbmax Sharon Assoc.*, 194 A.D.2d 414, 599 N.Y.S.2d 234 (1st Dep't 1993). In that case, the court denied plaintiff's motion for summary judgment on the issue of liability because plaintiff admitted that a gust of wind caused him to fall from a ladder while he was holding a storm window in both hands. *Id.* The court held that "since there is no evidence that the placement or positioning of the ladder caused plaintiff to fall," a triable issue of fact existed with respect to proximate cause. *Id.*

*Zeitner,* however, is inapposite to the case at bar. Here, there *is* evidence that the "placement or positioning" of the safety devices caused the accident. The safety line, which was fastened to the safety harness, was attached to the beam that was in the process of being installed. Therefore, the positioning of the safety devices caused Treadway to fall to the ground when the beam collapsed. *See Desrosiers v. Barry, Bette & Led Duke, Inc.*, 189 A.D.2d 947, 592 N.Y.S.2d 826 (3d Dep't 1993) (finding defendants liable because the inability to anchor or affix the lanyard was the proximate cause of the fall); *Lewis–Moors v. Contel of New York, Inc.*, 167 A.D.2d 732, 563 N.Y.S.2d 303, 305 (3d Dep't 1990).

Moreover, it was clearly foreseeable to defendants that workers would encounter wind conditions while installing steel beams at an elevated height. Thus, defendants should have provided Treadway with an appropriate safety device, such as a safety harness attached to a sound structure or scaffolding on which he could stand. As the court in *Cruz v. Turner Constr. Co.*, 279 A.D.2d 322, 720 N.Y.S.2d 10 (1st Dep't 2001), stated, "where the furnished protected devices fail to prevent a foreseeable external force from causing a worker to fall from an elevation, that worker is entitled to judgment as a matter of law under the statute." *Id.; see also Jimenez v. N.Y.C. Sch. Constr. Auth.*, 2000 WL 1804146, *5, 2000 U.S. Dist. LEXIS 17786, at *15 (S.D.N.Y. Nov. 20, 2000) (rejecting defendants' argument that other workers' conduct constituted a superceding cause relieving defendants of liability because the risk of injury was clearly foreseeable).

Furthermore, defendants contend that a triable issue of fact exists as to whether Treadway's actions were the sole proximate cause of the accident. They claim that Treadway, despite the gusty wind conditions, worked on the steel beam on the date of the incident. Had he refused to do so, they argue, the accident would not have occurred.

The Court does not find that Treadway's actions constituted the sole proximate cause of his injuries. There is no evidence indicating that Treadway should have known to discontinue his construction work when faced with a strong gust of wind. In fact, according to his deposition testimony, when Treadway brought up the wind conditions with his employer approximately a month and a half prior to the date of the injury, he was informed by his supervisor, "This is how it's done. This is how we're going to keep doing it." (Treadway Dep. Tr. at 134–35).

Even assuming, *arguendo*, that Treadway was negligent in working on the beam on the date of the accident, his actions do not affect the liability of the owners and contractors. A breach of the duty to furnish devices necessary for proper protection of a worker results in the "imposition of absolute liability regardless of any contributory negligence on the part of the injured employee." *Desrosiers*, 592 N.Y.S.2d at 826; *see also Orellano v. 29 East 37th St. Realty Corp.*, 292 A.D.2d 289, 740 N.Y.S.2d 16, 18–19 (1st Dep't 2002) ("As the Court of Appeals has instructed, where the owner or contractor has failed to provide adequate safety devices to protect workers from elevation-related injuries and that failure is *a* cause of plaintiff's injury, '[n]egligence, if any, of the injured worker is of no consequence.' "). As such, an injured employee's own carelessness will not reduce the liability of the defendants for failing to provide adequate safety equipment.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment on the issue of liability on the second cause of action against defendants is granted.

It is so ordered.